# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:12-cv-00081-MR-DLH

| | |
|---|---|
| SUSAN P. LEDFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Summary Judgment [Doc. 12].

## I. PROCEDURAL HISTORY

The Plaintiff Susan P. Ledford protectively filed an application for a period of disability and disability insurance benefits on December 10, 2007, alleging that she had become disabled as of July 28, 2006. [Transcript ("T.") 112-121, 142, 146]. The Plaintiff's application was denied initially and on reconsideration. [T. 88-93, 96-99]. The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which occurred on May 26,

2010. [T. 28-59]. On September 24, 2010, the ALJ issued a partially favorable decision, finding that the Plaintiff was disabled from July 28, 2006 through July 30, 2009, but that her disability ended on July 31, 2009, due to a medical improvement of her condition. [T. 9-23]. On February 24, 2012, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing]

2010. [T. 28-59]. On September 24, 2010, the ALJ issued a partially favorable decision, finding that the Plaintiff was disabled from July 28, 2006 through July 30, 2009, but that her disability ended on July 31, 2009, due to a medical improvement of her condition. [T. 9-23]. On February 24, 2012, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing]

more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no

3

severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education, or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## IV.  THE ALJ'S DECISION

On September 24, 2010, the ALJ issued a decision denying the Plaintiff's claim.  [T. 9-23].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was September 30, 2011 and that she had not engaged in substantial gainful activity since July 28, 2006.  [T. 16].  The ALJ then found that the medical evidence established the following severe impairments: obesity and degenerative disc disease of the

thoracic spine status post fusion. [T. 17]. The ALJ determined that none of Plaintiff's impairments met or equaled a listing. [Id.].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) but was precluded from sustaining the full-time performance of her work activities even at a sedentary level from July 28, 2006 through July 30, 2009. [Id.]. Specifically, the ALJ found that the Plaintiff occasionally could have lifted only 10 pounds and lifted lighter amounts more frequently during this time period. [Id.]. Additionally, the ALJ found that the Plaintiff would have been required to alternate among sitting, standing, and walking throughout the day for a total of only six hours out of an eight-hour workday. [Id.]. The ALJ further found that the Plaintiff's symptoms of mental impairment caused no more than a mild impact on functioning. [T. 18]. The ALJ found that the Plaintiff was unable to perform past relevant work from July 28, 2006, through July 30, 2009, and that the Plaintiff had no transferrable job skills for that time period. [T. 18-19]. Thus, the ALJ concluded that no jobs existed in significant numbers in the national economy the Plaintiff could have performed from July 28, 2006 through July 30, 2009, and that she was disabled for that period. [T. 19].

Despite the ALJ's initial disability conclusion, the ALJ found that the Plaintiff had a medical improvement related to her ability to work on July 31, 2009. [T. 20]. The ALJ determined that none of Plaintiff's impairments met or equaled a listing after July 31, 2009. [Id.]. Specifically, the ALJ found that, starting on July 31, 2009, the Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could lift 10 pounds or lighter frequently, sit for one hour continuously and six hours total, walk and/or stand for 10 to 15 minutes continuously and for two hours total, occasionally lift overhead, stoop, crouch, kneel, and climb stairs. [T. 21]. The ALJ noted that she should avoid climbing ladders, ropes, and scaffolds, and should avoid crawling. [Id.]. Further, he found that she was able to perform short cycle and detailed work. [Id.]. Using the Medical-Vocational Rules as a framework, the ALJ found that the Plaintiff was not disabled after July 31, 2009, regardless of whether or not she had transferable job skills. [T. 22].

In support of his finding of medical improvement, the ALJ noted the following:

> Subsequent to [her] surgery, the claimant made gradual medical improvement. Although, in a medical record dated September 3, 2008, the claimant's treating physician, Samuel J. Chewning, MD, noted that the surgery was done at a different

6

> level than planned, the screws were put in at the T6-7 level, rather than at the T7-8 level (Exhibit 19F, page 1). However, Dr. Chewning also notes that her symptoms have improved (Exhibit 19F, page 1). In addition, there has been a reduction in the size to the disc protrusion at the T7-8 level (Exhibit 19F, page 2). A June 2008 record, one-year post surgery, noted that the claimant felt the surgery helped with pain relief (Exhibit 5F, page 8; Exhibit 12F, page 2).
>
> By July 29, 2009 a medical record from Unifour Pain Treatment Center reporting that the claimant was stable on her medications and did not appear to be in acute distress (Exhibit 18F, page 8). In addition, she had some radiation to her right side however it is without focal motor or sensory deficits in her upper and lower extremities bilaterally (Exhibit 18F, page 8). Subsequently on January 28, 2010, the same treating facility's notes state that the claimant has been stable on a medical regimen that controls her back pain well, by the claimant's own description (Exhibit 18F, page 9).
>
> In addition, a consultative examiner's report, dated June 29, 2010, notes that she used a cane but her gait is unchanged without it (Exhibit 20F, page 4). Of note, the claimant sat for the entire one and a half hours during the hearing, although this fact is not dispositive of medical improvement, it does indicate she is capable of sitting for long periods.

[T. 20]. The ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not credible beginning on July 31, 2009, to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained

7

below." [T. 22]. The ALJ noted that he gave significant weight to the medical findings of consultative examiner Broc L. Pratt, MD, who performed an examination of the Plaintiff after her hearing. [Id.]. The ALJ noted, however, that "Dr. Pratt's residual functional capacity assessment is at times inconsistent with his medical findings; however, his findings are based on objective medical testing and therefore are given greater weight than his residual functional capacity assessment, which is only afforded some weight (Exhibit 20F)." [Id.]. Although he found that the Plaintiff's additional limitations preclude her from performing light work, he considered the Plaintiff's age, education, work experience, and residual functional capacity and found that there are still jobs that exist in significant numbers in the national economy that the Plaintiff could perform after July 31, 2009. [T. 23]. He therefore concluded that the Plaintiff was "disabled" as defined by the Social Security Act from July 28, 2006 to July 30, 2009, but that the Plaintiff's disability had ended July 31, 2009, due to medical improvement. [Id.].

## V. DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ erred in finding that there had been medical improvement in the

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

Plaintiff's impairments; and (2) that the ALJ erred as a matter of law in evaluating the Plaintiff's subjective complaint in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529 and in making a conclusory credibility finding in violation of SSR 96-7p. The Court will address each of these assignments of error in turn.

### A. The ALJ's Finding of Medical Improvement

When a claimant is found disabled through the sequential evaluation process, the judge must also determine if the disability remains through the date of the judge's decision, according to the standards set forth in 20 C.F.R. § 404.1594. A medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1). Further, the medical improvement must be related to the claimant's ability to do work, and "medical improvement is not related to [the claimant's] ability to work if there has been a decrease in the severity of the impairment(s) [as defined in 20 C.F.R. § 404.1594(b)(1)], present at the time of the most recent

favorable medical decision, but no increase in [the claimant's] functional capacity to do basic work activities . . ." 20 C.F.R. § 404.1594(b)(2).

In this case, it is unclear how the ALJ determined a medical improvement for the Plaintiff occurred on July 31, 2009. The ALJ referenced the Plaintiff's July 29, 2009 visit to Unifour Pain Treatment Center noting that she was "stable on her current medications," was not in "acute distress," and was "without focal motor or sensory deficits in her upper and lower extremities." [T. 20, 424]. Numerous references, however, to the Plaintiff's stability on her medications and the improvement of the Plaintiff's pain symptoms had been made frequently throughout the Plaintiff's records in the prior years.[2] Many of the Plaintiff's records which noted her stability or improvement also noted her continued back pain. [T. 262, 266, 273, 319, 324, 352, 417, 424-425]. The Plaintiff's Unifour Pain Treatment Center records explicitly recognized and explained this

---

[2] [T. 268 (9/20/06) (noting that bilateral upper and lower extremities revealed normal muscular strength and tone and straight leg raise was negative bilaterally]; [T. 262 (4/02/07) (noting that "[s]he has been stable on her current medications" and "demonstrates no focal motor or sensory deficits in her upper or lower extremities bilaterally")]; [T. 348 (7/11/07) (indicating that "[s]he is doing fairly well and reports improvement in her radicular pain")]; [T. 352 (9/17/07) (noting that "[s]he is doing well")]; [T. 273 (11/02/07) (noting that the Plaintiff's surgery "successfully improved symptoms of weakness, pain, and paresthesias in her lower extremities")]; [T. 275 (11/28/07) (noting that the Plaintiff's surgery had "improved her symptoms," she was "doing fairly well on her current medications," and was "in no acute distress" with a decreased pain rating)]; [T. 319 (4/01/08) (noting that the Plaintiff "has had no acute increase in her pain")]; [T. 417 (5/06/08) (noting that "[s]he is stable on her current medications")]; [T. 324 (6/23/08) (noting that she "does not appear in any acute distress . . . [and] gets up and moves comfortably")].

phenomenon. [T. 444 (10/22/10) (stating that "[s]table on a medical regimen for the types of physiological and postsurgical problems associated with Ms. Ledford's case has nothing more to do with her being cured; it only means that at the time point [in] question the medical regimen that she was on was adequate to manage her issues. The use of the word stable in that context is commonplace and should not be misinterpreted as changing the patient's overall or meaning that the patient has somehow miraculously achieved total cure.")]. The Plaintiff's Unifour Pain Treatment Center records prior to July 29, 2009 indicate symptoms of her "stability and "improvement" simultaneous with her symptoms of her continued thoracic pain.[3]

As the Plaintiff argues [Doc. 9 at 14-17], a medical record indicating stability "does not compel the conclusion that [a] claimant was capable of engaging in substantial gainful activity." Beck v. Astrue, No. 10-cv-362-JL, 2011 WL 4455861, at *4 (D.N.H. Sept. 23, 2011) (quoting Barriault v. Astrue, No. 07-cv-176-SM, 2008 WL 924526, at *7 (D.N.H. Apr. 2, 2008)). The terms "stable" and "doing well" do "not shed any light on residual

---

[3] [T. 417 (5/06/08) (noting that "[s]he is stable on her current medications")]; [T. 418 (7/23/08) (stating that "[s]he notes some continued discomfort but has improved her exercise tolerance" and "has no focal motor or sensory deficits in her upper or lower extremities bilaterally")]; [T. 420 (1/28/09) (noting that she "states her medications are maintaining her pain at a tolerable level" and she was "in no acute distress")]; [T. 422, (noting that she was "in no acute distress")].

11

functional capacity, nor [do they] provide any information as to whether [a claimant] was or was not disabled at the time." Beck, 2011 WL 4455861, at *5. Stability does not reflect the absence of symptoms, Gude v. Sullivan, 956 F.2d 791, 793 (8th Cir. 1992), and an ALJ cannot "reject [a medical] opinion based on [the doctor's] notation that [the claimant] was stable with medication," Morales v. Apfel, 225 F.3d 310, 319 (3rd Cir. 2000).

Further, it is unclear how the ALJ determined that the Plaintiff's functional capacity had changed on July 30, 2009. The ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence of record. 20 C.F.R. § 404.1545(a)(3). As noted above, many of the medical records dated before July 29, 2009, include notations similar to the notations in the July 29, 2009, record from Unifour Pain Treatment Center. In his decision, the ALJ made no references to the two physical residual functional capacity assessments of the Plaintiff which had been performed in 2008 by Margaret Parrish, M.D. [T. 283-290] and A. K. Goel, M.D. [T. 373-380], respectively. Further, the ALJ concluded that Broc L. Pratt, M.D.'s residual functional capacity assessment of the Plaintiff was "at times inconsistent with his medical findings" and thus "is only afforded some weight." [T. 22]. The Court is constrained to conclude on this record that the ALJ's determination of the Plaintiff's residual functional capacity,

12

rendering her able to perform light work on and after July 30, 2009 [T. 21], is inconsistent with the ALJ's determination that the Plaintiff was disabled through July 29, 2009.

In sum, there is not substantial evidence in the record to support the ALJ's characterization of the Plaintiff's medical improvement. Thus, the Plaintiff's first assignment of error warrants remand.

### B. The ALJ's Credibility Assessment

The Plaintiff next argues that the ALJ failed properly to assess her credibility with respect to her subjective allegations. [Doc. 9 at 18-24].

An ALJ can properly find that the claimant lacked credibility when the claimant's alleged level of pain is not commensurate with the treatment he sought out or received. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility"); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). An ALJ, however, "must not draw any inferences about an

individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7.

Here, because the evidence as a whole does not support the ALJ's basis for finding medical improvement as of July 30, 2009, there likewise is not substantial evidence to support the ALJ's finding of no credibility for the Plaintiff's allegations of subjective symptoms after July 30, 2009. Thus, the Plaintiff's second assignment of error is likewise of merit.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 12] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying her disability benefits after July 30, 2009. To the extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 8] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence

Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: April 9, 2014

Martin Reidinger
United States District Judge